UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CALVIN MOORE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:24-cv-1038-GMB |
| OLLIE'S BARGAIN OUTLET, INC., | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

*Pro se* Plaintiff Calvin Moore filed a complaint alleging intentional infliction of emotional distress and slander against Defendant Ollie's Bargain Outlet, Inc. ("Ollie's). Doc. 1 at 9–11.  The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 9.  Before the court is Ollie's Motion for Summary Judgment. Doc. 17.  The motion has been fully briefed (Docs. 19, 21 & 22) and is ripe for decision.  For the following reasons, the motion for summary judgment is due to be granted.

### **I. STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended." *Tippens v.*

*Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view

all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Ed. for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted). On the other hand, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010).

3

## II.  RELEVANT UNDISPUTED FACTS

On June 28, 2022, Moore visited Ollie's Bargain Outlet in Homewood, Alabama. Doc. 18-1 at 32, 34, 36; Doc. 21 at 2.  As soon as he walked through the door, the manager "approached [him] and said that [he] ha[d] to leave the store." Doc. 18-1 at 37, 79–80.  This statement confused Moore, and he asked why he had to leave, but the manager "was persistent about it" even though she would not tell him why he needed to leave. Doc. 18-1 at 38, 40.  She then told Moore that she would call the police if he did not leave. Doc. 18-1 at 39, 80.

Moore moved away from the door and into the store as the manager called the police. Doc. 18-1 at 40–41.  Moore overheard her tell the police that a few days earlier he had stolen items from the store and that she had a video recording of the incident. Doc. 18-1 at 41–42.  Moore denied the theft and decided that he needed to stay and defend himself from her accusation.[1] Doc. 18-1 at 41–42; Doc. 21 at 2.

When the police arrived, however, they told Moore to leave and did not ask for his side of the story. Doc. 18-1 at 43.  Moore wanted to see the video (and have the police see the video) so he could clear his name, but "the police showed no interest in even wanting to look at the video." Doc. 18-1 at 44.  He then told the police that he was not leaving the store and said they should "just go ahead and arrest

---

[1] Moore denies that he is the person in the photograph produced from the video. *See* Doc. 21-2 at 3; Doc. 21-3 at 1–2.  He also states that he has no motive to shoplift. Doc. 21-3 at 6.

me." Doc. 18-1 at 45.  The police officers arrested Moore for criminal trespass and took him to jail. Doc. 18-1 at 46–47; Doc. 18-2 at 2.  Moore bonded out of jail and ultimately pled guilty to an amended charge of disorderly conduct. Doc. 18-1 at 47, 77; Doc. 18-2 at 2.

### III.  DISCUSSION

Liberally construed, Moore's *pro se* complaint brings two claims against Ollie's under Alabama law: intentional infliction of emotional distress and slander. Summary judgment is due to be granted to Ollie's on both claims.

**A.     Intentional Infliction of Emotional Distress**

To state a claim for intentional infliction of emotional distress in Alabama, a plaintiff must demonstrate: "(1) that the defendant[] either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct: (2) that the defendant['s] conduct was extreme and outrageous; and (3) that the defendant['s] conduct caused emotional distress so severe that no reasonable person could be expected to endure it." *Callens v. Jefferson County Nursing Home*, 769 So. 2d 273, 281 (Ala. 2000) (citing *Jackson v. Ala. Power Co.*, 630 So. 2d 439 (Ala. 1993); *Am. Rd. Serv. v. Inmon*, 394 So. 2d 361 (Ala. 1980)).  This is such a high bar that the only consistently recognized categories of actionable conduct exist "in the family-burial context . . . , [when] barbaric methods [are] employed to coerce an insurance settlement[,] . . . and [in cases of]

5

egregious sexual harassment." *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011); *see also Callens*, 769 So. 2d at 281 (citing *Thomas v. BSE Indus. Contr., Inc.*, 624 So. 2d 1041 (Ala. 1993)). And although Alabama law does not cabin the tort to those three categories, the action in question must be at least as outrage-inducing as the conduct that supported claims in those contexts. *See Wilson v. Univ. of Ala. Health Servs. Found., P.C.*, 266 So. 3d 674, 677 (Ala. 2017); *O'Rear v. B.H.*, 69 So. 3d 106, 118–19 (Ala. 2011) (allowing an outrage claim when a family physician engaged in a homosexual relationship with a minor patient and provided narcotic medication to the minor despite indications that he was developing addictive tendencies). The bottom line is that this tort is viable "only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Little*, 72 So. 3d at 1172.

The facts here do not rise to the level of outrageous conduct necessary for sustaining a cause of action for intentional infliction of emotional distress. While upsetting to Moore, the incident resulting in his arrest does not equate with the conduct at issue in previous cases recognizing this tort. Simply put, Moore has no evidence of conduct that goes "beyond all possible bounds of decency" and is "atrocious and utterly intolerable." *Id*. Accordingly, summary judgment is due to be granted to Ollie's on this claim.

**B.    Slander**

Under Alabama law, slander is a false and defamatory oral communication of and concerning the plaintiff, communicated to a third person, that "subject[s] the plaintiff to disgrace, ridicule, odium, or contempt." *Anderton v. Gentry*, 577 So. 2d 1261, 1263 (Ala. 1991). There are two forms of slander in Alabama: (1) slander per se and (2) slander per quod. If the defamatory statement "imputes to the plaintiff an indictable offense involving infamy or moral turpitude," then it constitutes slander per se and the law implies damage. *Id.* "Slander per quod, by contrast, 'is a communication to a third person of a defamatory statement subjecting the plaintiff to disgrace, ridicule, odium, or contempt although not imputing the commission of a crime involving infamy or moral turpitude.'" *Marshall v. Planz*, 1998 WL 473062, *1 (M.D. Ala. July 22, 1998) (quoting *Anderton*, 577 So. 2d at 1263). Slander per quod is actionable only if the plaintiff pleads and proves special damages. *Anderton*, 577 So. 2d at 1263. Special damages are material harms that were the intended result or natural consequence of the slanderous statement, *Harrison v. Burger*, 103 So. 842, 844 (Ala. 1925), and the general rule is that they are limited to "material loss capable of being measured in money." Restatement (2d) of Torts § 575, cmt. b, at 198.

While not abundantly clear, the court assumes that Moore is complaining about Ollie's manager's statements to the police accusing him of stealing merchandise. These statements do not relate to an offense involving infamy or moral

7

turpitude, so Moore has not presented evidence establishing a claim of slander per se. As for slander per quod, even if the court were to assume that the statements to the police subjected Moore to disgrace, ridicule, odium, or contempt, the record does not establish that Ollie's actions caused Moore to suffer special damages. Moore did not plead or offer any evidence of special damages directly resulting from the allegedly slanderous communication; the claim that he suffered emotional distress does not suffice. *See Shook v. St. Bede Sch.*, 74 F. Supp. 2d, 1181 (M.D. Ala. 1999) (citing to Restatement (2d) of Torts § 575, cmt. c, at 199 ("Under the traditional rule, the emotional distress caused to the plaintiff by his knowledge that he has been defamed is not special harm; and this is true although the distress results in a serious illness.")). Accordingly, Ollie's is due summary judgment on Moore's claim for slander.

## IV. CONCLUSION

For these reasons, Ollie's Bargain Outlet, Inc.'s Motion for Summary Judgment (Doc. 17) is due to be granted. A separate final order will be entered.

DONE and ORDERED on June 20, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE